OF THE

## STATE OF MISSOURI

AT THE

### APRIL TERM, 1917.

(*Continued from Volume 270.*)

## WILLIAM ZOLLIE JONES v. CLIFFORD PATTER- SON, Appellant.

Division Two, May 29, 1917.

1. **CHARITABLE TRUSTS: Certainty of Objects and Terms.** An es- sential requisite to the validity of a charitable trust is that the language creating it be clear, definite and certain, by which is 1 .eant that the words of creation must announce a definite sub- ject and a certain object and that the terms of the trust be suf- ficiently declared.

2. ———: **Missionary Purposes.** By the words "for missionary pur- poses" used in the language creating a charitable trust nothing more is meant than the propagation of religion, and if the word "Savior" is used in connection with them they mean that the fund is to be used for the propagation of the religion of Jesus Christ.

3. ———: ———: **Mode of Application.** The fact that the language creating the charitable trust declares the fund is to be used for the propagation of religion will not defeat it, if the particular mode of application may be rendered susceptible of direction by a court of equity; but if the charity does not, by the language used, fix itself on a well defined object, but is general and indefinite, it must fail.

4. ———: ———: **Void for Uncertainty.** The owner of land, by her will, gave it to her husband for life, and declared that "upon his death I want it placed in the hands of Clifford Patterson (my nephew) to be used for missionary purposes in whatever field he thinks best to use it, so it is done in the name of my dear Savior and for the salvation of souls." *Held*, that no particular form of the Christian religion was intended to be propagated or advanced, the scope of the field in which the trustee is empowered to exercise the charity is as unlimited as human thought, no court could supervise his application of the fund, for it fixes upon no definite object, but in effect makes him the owner of the property, and is void for uncertainty; and consequently the property descends to the testatrix's heir at law.

Appeal from Platte Circuit Court.—*Hon. Alonzo D. Burnes*, Judge.

AFFIRMED.

*Norton B. Anderson* and *Minor Moore* for appellant; *Geo. W. Day* of counsel.

(1) Charitable trusts are recognized, enforced and protected by the courts of chancery of this State as a part of the general jurisdiction, not based upon—nor does it need the support of—the Statute 43d Elizabeth; nor is it dependent upon any prerogative power, but is inherent in a court of chancery. Chambers v. St. Louis, 29 Mo. 543; Academy v. Clemens, 50 Mo. 167; Howe v. Wilson, 91 Mo. 45; Powell v. Hatch, 100 Mo. 592; Woman's Ch. Assn. v. Kansas City, 147 Mo. 103; Goode v. McPherson, 51 Mo. 126; Schmidt v. Hess, 60 Mo. 591; Mo. Hist. Society v. Academy of Science, 94 Mo. 459; Barkley v. Donnelly, 112 Mo. 561; Lackland v. Walker, 151 Mo. 242. (2) Where the general objects of the bequest are pointed out, or if the testator has fixed the means of doing so by the appointment of trustees with the power in them, then the gift must be treated as sufficiently definite for judicial cognizance and will be carried into effect. Howe v. Wilson, 91 Mo. 52. (3) A charity is a gift for a public use, as a gift in and of the poor, to learning, to religion, to a humane object. Kam v. Gibboney, 101 U. S. 362. In general, a gift of property to be lawfully applied for an indefinite number of persons, by bringing them under

the influence of religion, is prima-facie charitable in the
legal sense. Turner v. Ogden, 1 Cox, 316. (4) No ob-
ject is more clearly charitable in the sense of the law than
the advancement of religion and education. 6 Cyc. 913;
Fairbanks v. Lamson, 99 Mass. 533. (5) A liberal con-
struction will be given by the court to bequests for the
support of Christianity; and objections drawn from
technical theology will have little weight when urged in
avoidance of such bequests. Trustees v. Phillips Acad-
emy, 12 Mass. 545. (6) The provisions of the will in
the case at bar being sufficiently clear according to the
accepted meaning of the words used, how is such a chari-
table use as is therein created regarded by the law of
this State? Has not such a charitable use always received
favorable consideration from our courts? Chambers
v. St. Louis, 29 Mo. 543; Academy v. Clemens, 50 Mo.
167; Schmidt v. Hess, 60 Mo. 541; Howe v. Wilson, 91
Mo. 45; Mo. Hist. Soc. v. Academy, 94 Mo. 459; Powell
v. Hatch, 100 Mo. 592; Barkley v. Donnelly, 112 Mo. 561;
Sappington Will Case, 123 Mo. 32; Shaw Will Case, 157
Mo. 210; Hadley v. Forsee, 203 Mo. 426; Strother v.
Barrow, 246 Mo. 250.

*Francis M. Wilson* and *Roy D. Williams* for respond-
ent.

The language "for missionary purposes in whatever
he [the appellant] thinks best, so it is done in the name of
my dear Savior, and for the salvation of souls," is too
indefinite in its purposes and objects to be enforceable as
a legal and valid trust. Dulany v. Middleton, 72 Md. 67;
Reeves v. Reeves, 5 Lea, 650; Carpenter v. Miller, 320
Va. 174; Bridges v. Pleasants, 4 Ired. Eq. 26, 44 Am. Dec.
94; White v. Fisk, 22 Conn. 31; Owen v. Missionary So-
ciety, 14 N. Y. 38, 67 Am. Dec. 160; Fifield v. Van Wyck,
64 Am. St. 756; In re Schmucker's Estate v. Reel, 61
Mo. 596; Jones v. Jones, 223 Mo. 450; 2 Perry on Trusts,
sec. 719; Howe v. Wilson, 91 Mo. 50; Hadley v. Forsee, 203
Mo. 428; Board of Trustees v. May, 201 Mo. 360; Moran
v. Moran, 73 N. W. 620; Lepage v. McNamara, 5 Iowa,
124; Grimes v. Harmon, 35 Ind. 198, 9 Am. Rep. 691;

Coleman v. Oleary, 70 S. W. 1068; Spalding v. Industrial School, 54 S. W. 200; McHugh v. McCole, 72 N. W. (Wis.) 631; In re Seymour's Will, 124 N. Y. S. 637; Stoepel v. Satterthwaite, 127 N. W. 673; In re Robinson's Will, 96 N. E. 925; In re Compton's Will, 131 N. Y. S. 183; Arnett v. Trust Co., 73 N. E. 930.

WALKER, P. J.—This is an action to quiet title under section 2535, Revised Statutes 1909. The property in controversy consists of 160 acres of land in Platte County.

A trial before the circuit court of that county resulted in a judgment for the plaintiff, from which the defendant has appealed.

The plaintiff is the sole heir at law of Fannie R. Lytle, who died testate in Los Angeles, California, in June, 1911, seized in fee of the land in question. The defendant is the nephew and co-executor with the husband of testatrix. The terms of the will of Mrs. Lytle, so far as concerns the matter at issue, are as follows:

"I, Fannie R. Lytle, hereby make my last will and testament. I give all my property which I now possess (both real and personal) in the State of California, Los Angeles County, and also the rent of my farm consisting of one hundred and sixty acres of land in Platte County, Missouri, to my husband during his lifetime; he is to use the income off of this property for his own use and benefit, and at his death, I want it placed in the hands of Clifford Patterson (my nephew) to be used for missionary purposes in whatever field he thinks best to use it, so it is done in the name of my dear Savior and for the salvation of souls."

The defendant claims title to the land under the will in trust for the purpose therein set forth. The plaintiff, on the contrary, contends on account of the indefinite nature of the language employed that no valid trust was created and as a consequence that he is entitled to the land by descent as the heir of his mother. The determination of the title to this land, so far as the parties hereto are concerned, is of course subject to the life es-

tate of testatrix's husband, concerning the validity of which devise no question is raised.

The validity of that portion of the will declaratory of the desire of the testatrix as to the disposition of her land in Missouri at the death of her husband is therefore the matter in issue.

On account of the frequency of the creation of charitable trusts there is no dearth of legal literature here and elsewhere on this subject. The philanthropic spirit manifested in this disposition of property prompts the courts to sustain same wherever the devise or bequest is of such a nature as to conform to well established precedents liberally construed. [Hadley v. Forsee, 203 Mo. l. c. 426.] An essential requisite to the validity of such a trust as is here under consideration is that it be clear, definite and certain; by which is meant that the words of creation announce a definite subject and a certain object and that the terms of the trust be sufficiently declared. [Jones v. Jones, 223 Mo. l. c. 450.] These measures of sufficiency appearing in the terms of the instrument, courts will not concern themselves with the wisdom or propriety of the trust or the character of the beneficiary.

The words "missionary purposes" employed by the testatrix in the creation of this trust constitute the subject of same, the object, as the context discloses, being the propagation of religion, limited in this instance to the Christian religion by a familiar reference to its founder, and the generally accepted doctrine as to his mission. But by missionary purposes nothing more is meant than the propagation of religion. Hence the subject and the object of the trust are synonymous and the definition of one necessarily includes that of the other. This fact, however, need not militate against the validity of the trust if the creator's purpose may, from the language employed, be definitely determined, or in other words, if the trust has been sufficiently declared. By this sufficiency of declaration is meant the use of such words as will enable a court of equity to enforce the performance of the duty imposed on the trustee.

The reason for this limitation was clearly expressed by the English High Court of Chancery in the beginning

of the last century in the case of Morice v. Bishop of Durham, 9 Vesey, Jr., 1. c. 405, where the Master of the Rolls, speaking for the court, said: "There can be no trust over the exercise of which the court will not assume control, for an uncontrollable power of disposition would be ownership and not trust."

The fact that the interest may be generally expressed will not necessarily cause the trust to fail on account of the uncertainty of the object (Sappington v. Sappington School Fund Trustees, 123 Mo. 32; First Baptist Church v. Robberson, 71 Mo. 326), if the particular mode of application may be rendered susceptible of direction by a court of equity. [Morice v. Durham, supra; Brennan v. Winkler, 37 S. C. 457; Webster v. Morris, 66 Wis. 366, 57 Am. Rep. 278.] Notwithstanding the permissibility of a general declaration, if the charity does not by its own terms fix itself on a well defined object or is not susceptible of such interpretation by the courts but is general and indefinite, it must fail. [Hadley v. Forsee, supra; Howe v. Wilson, 91 Mo. 45, 60 Am. Rep. 226; Fairfield v. Lawson, 50 Conn. 501, 47 Am. Rep. 669; Hunt v. Fowler, 121 Ill. 269; Gumble v. Pfluger, 62 How. Pr. 118.]

If a trust was created, therefore, in the instant case, the language of the testatrix will, under the rule above announced, enable it to be so determined. Without repeating her language, it may be said that the purpose sought to be effected was the propagation of the Christian religion, the resultant effect, as declared by the testatrix, being the salvation of souls. Certainly no more comprehensive words could have been used. It is true when we speak of the Christian religion we mean usually that particular form of belief to which we have given our allegiance, just as when we say, "All the people have gone to the seashore," or, "Everybody obeys the law" we mean and are so understood, indifferent as we may be intellectually to caste or class distinctions, to include only our associates or those with whom we come in daily contact. This limitation, however, will not be permitted in the interpretation of an instrument of the solemnity of a will. When the testatrix attempted to confer the power on the trustee to use the income of her property, we

should be enabled from the terms employed to determine what particular form of the Christian religion was intended to be propagated or advanced. It is in no wise intimated whether one or the other of the most general classifications that have been made is meant, to-wit, the Arminian or Calvinistic or if under the more limited classification the activities of the trustee were to be exercised in behalf of the Catholic or Protestant faith or one of the multiform other subdivisions of the followers of Christ. The scope of the field in which the trustee is intended to exercise this charity is as unlimited as human thought when applied to the determination of what constitutes a belief in the Christian religion. Thus given free rein in the exercise of his powers, no court could determine whether or not he was abusing his trust, or in other words, he would be free from judicial supervision. Under such circumstances it cannot be reasonably concluded that the trust created is of such a nature as to enable it to be controlled by the courts, or in other words, the trustee on account of the absolute power attempted to be conferred, may from the words used, not inappropriately be classified as an owner of the property rather than one charged with the execution of a trust.

Further than this, the generality of the words employed is such that it cannot be known what class of persons are entitled to the benefit sought to be conferred or what that benefit will consist in. The entire matter is, in fact, left to the wisdom, or it may be, the whim or caprice of the trustee. Strong and far-reaching as is the arm of equity in upholding a charity, the one here sought to be created is beyond its grasp.

We are not left to the terms of this trust in determining its validity. Many well reasoned cases containing similar words to those here employed have, upon judicial analysis, been held insufficient to create valid trusts.

In Board of Trustees v. May, 201 Mo. 360, where a testatrix gave to a person named in her will a portion of her estate "to use as he may desire in the Master's work," it was construed as an ineffectual attempt to create a trust, because the objects of the testatrix were so inde-

finite that a court could not direct the manner in which her intention should be carried out.

In Schmucker's Estate v. Reel, 61 Mo. 592, it was held that a trust to be applied according to the best discretion of the trustee must fail for uncertainty of purpose.

Likewise in Carpenter v. Miller, 3 Va. 174, it was held that a trust for the propagation of the Gospel in foreign lands was too indefinite to be upheld.

And in Bridges v. Pleasants, 4 Ired. Eq. (N. C.) 26, a bequest to foreign missions and the poor saints was held not to create a trust because of uncertainty.

In Owens v. Missionary Society, 14 N. Y. 380, 67 Am. Dec. 160, a bequest to preach the gospel to the poor was held ineffectual for its generality.

In Reeves v. Reeves, 5 Lea (Tenn.), 644, a bequest to be held by the testator's wife as agent for Christian Church of the United States to be used in a manner best to promote the interests of said church in the cause of God, was declared not to be a definite trust and hence could not be upheld.

In Fifield v. Van Wyck, 94 Va. 557, 64 Am. St. 745, a bequest was made to certain trustees for the benefit of the New Jerusalem Church as they deemed best. The court held the purpose to be wholly indefinite, the discretion of the trustees being unlimited except that the fund must be for the benefit of the church named, and hence unenforcible in equity and void.

The Tilden Will Trust case (Tilden v. Green, 130 N. Y. 29, 27 Am. St. 487), is a leading authority on this subject. It involved the validity of the will of Samuel J. Tilden. Among other powers he sought to give his trustees authority to promote such scientific and educational objects as they should designate. The court in construing this will said among other things: "As the selection of the objects of the trust was delegated absolutely to trustees, there is no person or corporation that could demand any part of the estate or maintain an action to compel the trustees to execute the power in their favor. This is the fatal defect in the will. The will of the trustees is made controlling and not the will of the testator."

Terms of like import appear in testatrix's will. There is no limit upon the trustee's authority except his discretion. It therefore follows that so far as the will attempts to create a trust in the lands in question, it is void.

Where a devise in trust is invalid in not being fully expressed or clearly defined, the property descends to the heirs at law. [Stonestreet v. Doyle, 75 Va. 356; Ruth v. Oberbrunner, 40 Wis. 238; Brewster v. McCall, 15 Conn. 274; Columbian Univ. v. Taylor, 25 App. D. C. 124; New Orleans v. Hardie, 43 La. Ann. 251; Maught v. Getzendanner, 65 Md. 527; Nichols v. Allen, 130 Mass. 211.]

From this it follows that the judgment of the trial court should be affirmed and it is so ordered. All concur.