SAPPINGTON *et al.*, *Appellants*, v. THE SAPPINGTON SCHOOL FUND TRUSTEES, *et al.*

### Division Two, June 12, 1894.

1. **Will:** BEQUEST TO EDUCATE POOR CHILDREN: CHARITIES. A testator left a fund in trust, the income to be spent "in the education of the most necessitous poor children" in the county, but if at any time the

public funds should become sufficient to educate such children, then the income was to be applied to such other objects of charity in the county as in the judgment of the trustees most needed it. It appeared that all the funds provided by law for the county for the preceding year maintained the school for less than seven months, that the seating capacity of the school was less by two thousand, six hundred and twenty than the number of children of school age, and that the deficit in the public school fund for the year was about $600. *Held,* that the contingency for the determination of the trust for the school children had not occurred.

2. **Charitable Uses:** EQUITY. Mere obscurity or indefiniteness will not necessarily defeat a gift to charitable uses; courts of equity will uphold and administer gifts where they are made to charity generally, if there is a trustee with power to make them definite and certain.

*Appeal from Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

Equitable proceeding instituted by plaintiffs as the the heirs of John Sappington who sought to have a certain fund in the hands of the defendant trustees brought into court, an accounting had and a decree made declaring that the trust hereinafter more particularly mentioned, has ceased and determined, and ordering that the fund with its accumulations be distributed among said heirs.

Dr. John Sappington, a prominent and wealthy citizen of Saline county, on October 24, 1853, executed a trust deed whereby he transferred to Claiborne F. Jackson and eight other designated citizens of Saline county, the sum of $10,519.46, in trust for the purpose of contributing to the education of the poor children of Saline county, in the manner prescribed in said instrument. The deed aforesaid provided in such behalf, that: "Said sum of money is to be kept at interest perpetually by the aforesaid trustees, and the interest

accruing therefrom is to be annually expended by them *in the education of the most necessitous poor children in the county of Saline aforesaid,*" and further provided that "said trustees are authorized and requested to organize themselves into a board of trustees, to appoint a chairman, secretary and treasurer, to hold meetings at least once in every year at the town of Marshall or such other place in the county aforesaid as may by them be deemed best, to select the most needy children for education through the county, to keep a regular record of all their acts subject to the inspection of all persons whatsoever. Such record to contain the name and age of each scholar, and the amount of money annually expended upon each scholar, and, also, the whole amount expended upon every scholar to be kept in tabular form."

Said deed also provided: "*In the event that at any time hereafter the common school fund, and other educational funds which may be provided by the state, or which may come into the possession of the state from any source whatever, for the purpose of education, shall become sufficient to educate all the poor children of said county*; then, and in that case, the said board of trustees are hereby authorized and requested to apply the interest of said fund *to such other objects of charity in said county as in their judgment may be most needy,* but in no case nor for any purpose is any part of the principal of said fund to be used or diminished."

At the same time and on the same day, October 24, 1853, Dr. Sappington also made and executed in due form, his last will and testament, which, among other things, provided as follows: "I will, that my executors shall, so soon after my death as they may be able to do it, pay over to the trustees that I have this day appointed in an instrument of writing which I have made, and in which instrument I have set apart the sum

of $10,519.56 for the purpose of educating thế most necessitous poor children in the county of Saline, the further sum of money which together with the sum this day handed over to the said trustees shall make the sum of $20,000, and the said trustees herein referred to, are to manage the said fund placed in their hands, precisely in the same manner, and apply the interest on the same to the purpose as specified in the aforementioned instrument of writing."

Dr. Sappington died on October 7, 1856. And his will was duly probated and his estate finally settled in the probate court of Saline county. The executors paid over to the above named trustees, said sum of $10,519.56 in accordance with the terms of the will and said trustees thus became possessed of the sum of $20,000, which sum they invested at interest and applied the annual income to the education of the poor and necessitous children of Saline county in accordance with the terms of the trust.

Afterwards, to wit, March 19, 1861, said trustees obtained from the legislature of Missouri a substantial act of incorporation which is as follows:

"Whereas, Dr. John Sappington, late of the county of Saline, state of Missouri, bequeathed by last will and testament (now of record in said county of Saline) a certain sum of money to certain trustees named in said will and to their successors in office, which said fund was to be loaned at interest by said trustees, and the interest arising from said fund to be appropriated annually be said trustees to the education of the poor and necessitous children of said county of saline, and,

"Whereas, in order the better to enable said trustees to carry into effect the trust confided to their hands, they desire an act of incorporation to be passed for that purpose; therefore,

"Be it enacted by the general assembly of the state of Missouri, as follows:

"Section 1. John W. Bryant, M. M. Marmaduke, A. W. Davison, Wm. Price, Ossamus Hurt, W. B. Sappington, R. E. McDaniel, C. F. Jackson, W. J. Brown and M. L. Laughlin, and their successors and assigns, are hereby incorporated as 'The Sappington School Fund Trustees,' and as such are hereby created a body corporate and politic, and shall have continual succession, for the purpose of loaning out said school fund, and appropriating the interest annually accruing on the same to the education of the poor and necessitous children of said county of Saline, in the manner and mode prescribed in the will of the late John Sappington, of said county; and to do and peform all other matters touching the management of said fund as provided in said will; and by that name may sue and be sued," etc.

The petition sets forth all of the foregoing facts; avers that plaintiffs are the heirs at law of said Dr. Sappington, and concludes with the following allegation: "From and after the date of incorporation the Sappington School Fund Trustees continued to apply said annual income in the same manner and for the same purpose, so long as there was any occasion or opportunity for so doing; but plaintiffs aver that the common school fund and other educational funds provided by the state, and which has come into its possession for the purpose of education since the creation of said trust, and set apart for the use of Saline county for establishing and maintaining free public school therein, is sufficient to educate all the poor children in said county, thereby rendering it unnecessary, and, in fact, impracticable to apply any portion of the annual income from said Sappington school fund for the maintenance of such schools or the education of

·children in attendance upon same; that the said common school fund having thus become sufficient to educate all children of said county, such trust, according to the terms and conditions of the instrument creating the same as above set forth, has ceased and determined; that the further provision expressed in said instrument purporting in such event to authorize said trustees '*to apply the interest of said fund to such other objects of charity in said county as, in their judgment, may be most needed,*' is so general and indefinite as to be incapable of being enforced, and is void for indefiniteness; that by reason of the premises the right and title to said trust fund with its accumulations reverted to the heirs at law of the said John Sappington, deceased.

"Wherefore, in consideration of the premises, plaintiffs pray that the court may decree that said trust has ceased and determined, and that defendants, the Sappington School Fund Trustees, be required to render an account of said trust, and bring the fund into court to be paid to the heirs at law and distributees of said John Sappington, parties to this action, according to their respective interests, to be ascertained and determined by the court and for such other and further relief as may be just and proper."

Defendants' answer denied specifically, all the averments contained in the above recited paragraph of the petition, but admitted all the allegations of the petition as to the creation, organization and management of said trust, the death of Dr. Sappington and the heirship of plaintiffs.

At the close of the evidence, the court below entered the following finding and decree, to wit: "Now on this twenty-eighth day of June, A. D. 1892, this cause having come on to be heard upon the petition, answer and reply, and the proofs taken therein having been argued

by counsel for the respective parties, and the court having duly considered the same and having been requested by the attorneys for the plaintiffs to state in writing its conclusion of facts in the cause, the court in writing states its finding therein as follows:

"Having been requested by the attorneys for plaintiffs to state in writing my conclusion of facts in this cause, I find that the following allegation in plaintiffs' petition 'that the common school fund and other educational fund provided by the state and which has come into its possession for the purpose of education, since the creation of said trust and set apart for the use of Saline county, for establishing and maintaining free public schools therein is sufficient to educate all the poor children of said county, thereby rendering it unnecessary and, in fact, impracticable to apply any portion of the annual income from the Sappington school fund, for the maintenance of such schools or the education of children in attendance upon the same', is not sustained by the evidence.

"The court finds that the authority given to said trustees 'to apply the interest of said fund to such other objects of charity in said county as in their judgment may be most needy,' is not so general and indefinite as to be incapable of being enforced, and is not void for indefiniteness.        RICHARD FIELD, Judge.

"It is therefore considered, ordered and adjudged by the court, that plaintiffs' petition herein be dismissed," etc.

Whereupon plaintiffs appealed to this court. Other facts, as necessary, will be adverted to further on.

*C. P. & J. D. Johnson* and *Jos. S. Laurie*, for appellants.

(1) The public or common school fund has become sufficient to educate all the poor children of Saline

county. Const. art. 11, secs. 1, 11; also art. 10, sec. 11; R. S. 1889, arts. 1 and 2, chap. 143. (2) The ulterior trust attempted to be created by Dr. Sappington is void, and the property consequently reverts to the heirs at law of the donor. *Wetmore v. Blind Institute,* 3 N. Y. S. 179; *Read v. Williams,* 125 N. Y. 560; *Tilden v. Greene,* 130 N. Y. 29; *Nichols v. Allen,* 130 Mass. 211; *Dulaney v. Middleton,* 72 Md. 67; *Gamble v. Trippe,* 75 Md. 253; *Yingling v. Miller,* 26 Atl. Rep. 491; *Norcross v. Murphey,* 44 N. J. Eq. 522; *Webster v. Morris,* 66 Wis. 366; *In re Hoffen's Estate,* 70 Wis. 523; *Adye v. Smith,* 44 Conn. 60; *Bristol v. Burt,* 53 Conn. 242; *Brennan v. Winkler,* 37 S. C. 457; *Kelley v. Nichols,* 17 R. I. 306; *Johnson v. Johnson,* 23 S. W. Rep. (Tenn). 114. (3) The facts of this case are such that it does not come within the rule announced by this court in *Howe v. Wilson,* 91 Mo. 45, and affirmed in the later decisions, *Powell v. Hatch,* 100 Mo. 592, and *Barkley v. Donnelly,* 112 Mo. 561. (4) The court erred in failing to find separate conclusions of fact as requested by plaintiff. *Nichols v. Carter,* 49 Mo. App. 402.

*Boyd & Murrell* for respondents.

(1) The evidence offered by the plaintiffs was not sufficient to establish as a fact that the condition "when the public school fund had become sufficient to educate all the poor children of Saline county" had occurred as contemplated by Dr. Sappington in his deed. (2) Even if the event referred to in the deed of Dr. Sappington as the event, when the school fund should be sufficient to educate all the poor children of Saline county had occurred, the provision of the deed that the trustees should "then and in that case be authorized and requested to apply the interest of said fund to such other objects of charity in said county as in their judg-

ment may be most needy, but in no case nor for any purpose, is any part of the principal of said fund to be used or diminished," is a valid trust.    It is a gift for charitable purposes.    The grantor by his deed "has provided a means for making that certain which otherwise might appear to be uncertain."    *Howe v. Wilson*, 91 Mo. 48; *Powell v. Hatch*, 100 Mo. 592; *Barkley v. Donnelly*, 112 Mo. 561; *Pennoyer v. Wadhams*, 25 Pac. Rep. (Oregon) 720.

SHERWOOD, J.—Two questions are presented by this litigation:

*First.*    At the date of the institution of this equitable proceeding, did it appear that the common school fund and other educational funds provided by the state, or which come into its possession from other sources, for the purpose of education had become sufficient to educate all the poor children of Saline county; or in other words had the contingency or "event" contemplated by Dr. Sappington in creating such trust occurred?

*Second.*    Granting the occurrence of such "event," did the direction of the donor on the occurrence thereof, *"to apply the interest of such fund to such other objects of charity in said county as in their judgment may be most needy,"* create a valid and enforceable trust, or was the same void for vagueness and indefiniteness, and therefore incapable of being enforced?

I.    As to the first question:    Section 11 of article 10 of the constitution provides that:    "For school purposes in districts, the annual rate on property shall not exceed forty cents on the hundred dollars valuation: *Privided,* the aforesaid annual rates for school purposes may be increased, in districts formed of cities and towns to an amount not to exceed one dollar on the hundred dollars valuation, and in other districts to an

amount not to exceed sixty-five cents on the hundred dollars valuation, on the condition that a majority of the voters who are tax payers, voting at an election held to decide the question, vote for said increase.''

The provisions of the statute (R. S. 1889, chap. 143, arts. 1, 2) simply provide the machinery for enforcement of constitutional provisions.

We see nothing in either these constitutional or statutory provisions having any tendency to show that the ''event'' referred to in the first question had occurred, because, notwithstanding such provisions, the evidence shows that the expenditure of all the school funds provided by law to be expended in Saline county, for the year 1839-90, was only sufficient to maintain the schools in said county for an average length of time less than seven months in the year. That, while there were ten thousand, six hundred and forty persons of school age enumerated, there was seating capacity in all the schools of the county for only eight thousand and twenty. There was no effort to show how long a term of school was taught in each or any district, or to show that schools were maintained in each district. The evidence does show that the school fund received from all sources during the year was $67,605.34, and that the amount expended was $68,223.68 and that the average time taught in each district was less than seven months, and that the amount raised by tax directly voted at school meetings was two per cent. of the whole amount. Clearly, then, the ''event'' designated by Dr. Sappington had not occurred; the school fund had not ''become sufficient to educate all of the poor children of said county.''

II. As to the second question: No doubt the gift mentioned is valid, the rule being that in gifts to a charitable use, mere obscurity or indefiniteness, will not necessarily defeat the trust; for courts of chancery will

uphold and administer gifts where they are made to charity generally, if there is a trustee with power to make them definite and certain. "Courts look with favor upon all such donations, and endeavor to carry them into effect, if it can be done consistently with the rules of law. If the words of a gift are ambiguous or contradictory, they are so construed as to support the charity if possible. It is an established maxim of interpretation, that the court is bound to carry the gift into effect, if it can see a general charitable intention consistent with the rules of law, even if the particular manner indicated by the donor is illegal or impracticable; or, as Lord Hardwicke said, 'The bequest is not void, and there is no authority to construe it to be void, if by law it can possibly be made good;' or, in other words, 'there is no authority to construe it to be void by law if it can possibly be made good.'" 2 Perry on Trusts [4 Ed.], sec. 709.

Here there is a trustee with power to make the gift definite and certain, and power in a court of equity to see that the trustee does not commit a breach of his trust and to compel its observance by him. 2 Perry on Trusts [4 Ed.] sec. 719. See, also, *Chambers v. City*, 29 Mo. 543; *Academy v. Clemens*, 50 Mo. 167; *Schmidt v. Hess*, 60 Mo. 591; *Baptist Church v. Robberson*, 71 Mo. 326; *Howe v. Wilson*, 91 Mo. 48, and cases cited.

But in view of the ruling made in the first paragraph of this opinion, the ruling of this paragraph in favor of plaintiffs would not be of any benefit to them, at least so far as concerns the present proceeding.

III. Respecting the finding of facts, we discover nothing objectionable; it was in substantial compliance with the statute. Therefore decree affirmed. All concur.